**SO ORDERED.**

**DONE and SIGNED July 28, 2016.**



**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| In Re: | * | Case #15-30223 |
| Bernice Rena Robinson | * | Chapter 13 |
| Debtor | * | |

---

| | | |
|---|---|---|
| Bernice Rena Robinson | * | AP #16-03004 |
| Plaintiff | * | |
| | * | |
| Versus | * | |
| | * | |
| JH Portfolio Debt | * | Judge Jeffrey P. Norman |
| Equities, LLC, *et al.* | * | |
| Defendants | * | |

---

**ORDER CONDITIONALLY GRANTING MOTION TO DISMISS ADVERSARY**
**PROCEEDING, DENYING MOTION TO STRIKE, ALLOWING NOTICE TO**
**WITHDRAW CLAIM, AND GRANTING LEAVE TO AMEND COMPLAINT**

1

# I.    INTRODUCTION

On April 25, 2016, plaintiff Bernice Rena Robinson ("Robinson"), who is the debtor in the underlying bankruptcy case, initiated this adversary proceeding against JH Portfolio Debt Equities, LLC ("JH Portfolio"), JD Receivables, LLC ("JD Receivables") and Jeffrey S. Dunn ("Dunn"), alleging abuses in the proof of claim process.  At controversy is proof of claim No. 10, ("Claim 10") in the amount of $760.00 filed by the defendants on April 24, 2015.  The account detail attached to the claim indicates the original creditor was World Finance Corporation of Louisiana, that the current creditor is JH Portfolio and/or JD Receivables, and that the debt was charged off by the original creditor on May 12, 2009.  In her original schedules filed February 25, 2015 (Docket No. 1, pg. 17), the debtor lists on her Schedule F – Creditors Holding Unsecured Claims a claim to World Finance in the amount of $1353.00, and disclosed the consideration for the claim as a loan.

The prescriptive period in Louisiana for the type of debt on which Claim 10 is based is five years.  In Louisiana, a statute of limitations is functionally equivalent to a "prescriptive period." Promissory notes, whether negotiable or not, are subject to a prescriptive period of five years in Louisiana.  La.Civ.Code art. 3498.  It is uncontroverted that the prescription period on Claim 10 has expired and the plaintiff's pleadings do not indicate that Claim 10 is not factually accurate. Therefore, the defendants have filed a proof of claim on a debt older than five years, which is outside the Louisiana prescription period.  Accordingly, the debt is potentially unenforceable under Louisiana law.  While prescription accrues in Louisiana through the mere passage of the designated term, prescription cannot have effect unless affirmatively pled.  Prescription in Louisiana is pled as a preemptory exception—basically as an affirmative defense.    Under Louisiana law, prescription has no effect unless properly pled.

Defendant JH Portfolio has sought to withdraw Claim 10, which has drawn an objection from the plaintiff. In the Monroe Division of the Western District of Louisiana, the work division is such that a different judge is assigned to a Chapter 13 debtor's main bankruptcy case than the judge assigned to any associated adversary proceedings. In the main bankruptcy case, presiding Judge John W. Kolwe entered an order (Docket No. 32) referring certain matters in the main case to this Judge as the resolution may bear substantively on the resolution of the adversary complaint. Judge Kolwe's order consolidated into this adversary proceeding the Notice to Withdraw Claim filed by JH Portfolio (Docket No. 24), the Motion to Strike Notice to Withdraw Claim (Docket No. 26) filed by the debtor, and the Response of JH Portfolio (Docket No. 29) filed in the main bankruptcy case. Defendant JH Portfolio has filed a Motion to Dismiss and to Strike (Docket No. 19) in the instant adversary proceeding. A hearing on all of these matters was held on July 21, 2016.

The legal issues involved in these matters are such that reasonable minds may differ and on which learned jurists currently disagree. A great deal of consumer debt is traded—that is, the debts are bought and sold at a hefty discount. Original creditors sell uncollectable debts to a "debt collector" who then attempts to collect the debt. In 2016, political satirist John Oliver illustrated how easy it was to establish an unlicensed debt-buying business in Mississippi by forming via the internet Central Asset Recover Professionals, or CARP (named after the bottom feeding fish). Soon after CARP was founded, it purchased $15,000,000.00 in a portfolio of prescribed medical debt for $60,000.00. CARP acquired the names, current addresses and social security numbers of nearly 9,000 individuals in the portfolio and CARP was free to pursue the debt as it saw fit. Oliver later forgave the debt in what he called the largest giveaway in television history.

16-03004 - #33  File 07/28/16  Enter 07/28/16 16:37:18  Main Document  Pg 3 of 23

Eventually, these "stale" claims often become unenforceable under state law, typically because of a prescription period or a statute of limitations. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State Action to protect consumers against debt collection abuses." 15 U.S.C. 1692(e).

A year later, the Bankruptcy Reform Act of 1978 was enacted, which replaced the former Bankruptcy Act of 1898. While it has been amended several times, it remains the uniform federal law that governs all bankruptcy cases. The Bankruptcy Code permits creditors to file time-barred claims. 11 U.S.C. § 502. However, a debtor may contest a creditor's claim through the claims objection process provided under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

This adversary proceeding is based, in part, on the defendants' filing of a prescribed or time-barred proof of claim. Under a plain reading of the Bankruptcy Code, this is allowed. In her complaint, the plaintiff alleges the defendants violated the FDCPA by filing a proof of claim for a time-barred debt. 15 U.S.C. § 1692. In considering the applicability of the FDCPA to actions taken by creditors in and during a debtor's bankruptcy case, a court must decide whether the Bankruptcy Code precludes application of the FDCPA in bankruptcy cases altogether. Courts currently disagree on whether the FDCPA provides a remedy for debtors in bankruptcy. The federal appellate courts are currently evenly split on this issue. The Second,[1] Ninth,[2] and Eighth[3] Circuits have generally held that the Bankruptcy Code precluded use of the FDCPA in bankruptcy

---

[1] *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010).
[2] *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002).
[3] *Nelson v. Midland Credit Mgmt.*, No. 15-2984, 2016 U.S. App. LEXIS 12683 (8th Cir. 2016).

4

cases. The Third,[4] Seventh,[5] and Eleventh[6] are hold that the FDCPA is applicable in bankruptcy cases. The Fifth Circuit has not yet ruled on this issue.

## II.    JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a) and the United States District Court for the Western District of Louisiana's General Order of Reference of Bankruptcy Cases and Proceedings dated June 1, 2012.  Upon referral, bankruptcy courts are authorized to hear, determine, and enter appropriate orders and judgments in core proceedings "arising under" the Bankruptcy Code, or "arising in" a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1).  Proceedings "arising under" the Bankruptcy Code are proceedings that involve a cause of action created or determined by a statutory provision of the Bankruptcy Code.  This particular adversary proceeding includes both core and non-core disputes.

The claim objection and abuse of process claims are core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 13 estate.  These disputes are additionally core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

The FDCPA claim does not arise under the Bankruptcy Code or a case under the Bankruptcy Code.  Rather, this causes of action arise under the FDCPA.  Similarly, this adversary proceeding is not a proceeding that can arise solely in the context of a bankruptcy case, because the causes of action may be pursued without the prerequisite of a bankruptcy filing.  As such, the

---

[4] *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013).
[5] *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004).
[6] *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014).

FDCPA cause of action is not a core proceeding. Nonetheless, this court may exercise jurisdiction if the proceeding is "non-core, but related to" the bankruptcy. 28 U.S.C. § 157(c)(1). Because the causes of action in this adversary proceeding could form the basis for increased payments to creditors under the plan previously confirmed by the plaintiff in her bankruptcy case, this adversary proceeding is non-core but related to the plaintiff's bankruptcy case.

Although the court may hear this adversary proceeding, it may not enter a final judgment or order unless all of the parties to the adversary proceeding consent. 28 U.S.C. § 157(c)(1) and (2). Under *Stern v. Marshall*, the question of whether a bankruptcy court may enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. 564 U.S. 462, 131 S. Ct. 2594, 2618, 180 L. Ed. 2d 475 (2011). This adversary proceeding contains non bankruptcy federal claims which would not necessarily be resolved in the claims allowance process. However, the Supreme Court recently held that parties may consent to the bankruptcy court's adjudication of a so-called *Stern* claim without implicating Article III issues "when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network v. Sharif*, 191 L. Ed. 2d 911, 135 S. Ct. 1932, 2015 WL 2456619 at *3 (U.S. 2015). Assuming all parties consent, or impliedly consent, this Court would have authority under *Wellness* to enter a final judgment. The plaintiff has consented to the entry of final orders or judgment in this adversary proceeding (Docket No. 1, pg. 5) and defendant JH Portfolio has failed to object to this Court's entry of a final order or judgment pursuant to *Stern.* Still further, JH Portfolio has requested the Court to dismiss the complaint. Accordingly, pursuant to *Wellness*, the Court finds JH Portfolio has impliedly consented to this Court entering a final judgment or order. Alternatively, should it be required or necessary, this memorandum order can be considered a report and recommendation to the District

6

Court for the Western District of Louisiana.

## III. LEGAL STANDARD

JH Portfolio's motion to dismiss was filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), and the plaintiff's motion to strike was filed pursuant to Rule 12(f), each Rule which has been incorporated into Federal Rule of Bankruptcy Procedure 7012. In evaluating whether a complaint fails to state a claim, the Court must construe the complaint liberally in favor of the plaintiff as the non-moving party and assume the truth of all well-pleaded facts. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). The Court must assess a motion to dismiss only on "the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). In order to survive a motion to dismiss, "a plaintiff must plead sufficient 'facts to state a claim to relief that is plausible on its face.'" *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, (5th Cir. 2015), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

## IV. LEGAL ANALYSIS

### A. WITHDRAWAL OF THE PROOF OF CLAIM

As previously stated, JH Portfolio has attempted to withdraw its proof of claim in the underlying bankruptcy case (Case No. 15-30223, Docket No. 24). The debtor filed a motion to strike JH Portfolio's notice of withdrawal (Case No. 15-30223, Docket No. 26), to which JH Portfolio objected (Case No. 15-30223, Docket No. 29). The presiding judge in the main case, Judge John Kolwe, consolidated these matters into this adversary proceeding (Case No. 15-30223, Docket No. 32). For the following reasons, the motion to strike is denied, and JH Portfolio is permitted to withdraw its proof of claim.

Federal Rule of Bankruptcy Procedure 3006 provides the following:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and an creditors' committee elected pursuant to § 705(a) or appointed pursuant to § 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

As the debtor has filed the instant adversary proceeding against the creditor attempting to withdraw its claim, the creditor does not have the absolute right to withdraw its claim. Instead, the Court must decide whether the claim should be disallowed, and put forth any terms or conditions as it may deem appropriate.

The main concern is the effect the withdrawal of the claim would have on this adversary proceeding. If the Court allowed JH Portfolio to withdraw its claim, would it render this adversary proceeding a relative nullity? This Court holds that the claims under the FDCPA are not rendered moot by the withdrawal of the claim. If JH Portfolio violated the FDCPA, it did so when the claim was filed. Simply withdrawing the claim does not eliminate the potential FDCPA violation that already occurred. One bankruptcy court said this: "Even had the creditor withdrawn its claim in accordance with [Rule 3006], because the issue before the Court is premised on the creditor's initial filing of the proof of claim and an alleged violation of non-bankruptcy law, the proceeding is still ripe." *Gatewood v. CP Med. LLC (In re Johnny Jr.)*, 2015 Bankr. LEXIS 2906 (Bankr. W.D. Ark. 2015).

8

Accordingly, pursuant to Rule 3006, this Court will allow JH Portfolio to withdraw its claim, and will accordingly deny the debtor's motion to strike. The withdrawal of the claim does not affect this Court's determination as to whether an FDCPA violation has occurred.

## B. STANDING

JH Portfolio seeks dismissal because the plaintiff lacks standing. It claims the plaintiff has not suffered an injury in fact and that her action must be dismissed. This Court disagrees. In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court held that "[t]o establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical. *Id.* at 1548. Further, "a 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. at 1548. In a Chapter 13 case, the debtor can object to the time-barred claim and seek its disallowance. That legal task, while uncomplicated, has an associated cost in legal fees that this debtor must pay. If the claim was improperly filed under the FDCPA and she seeks disallowance, then at a minimum she has been injured by the required payment of these additional attorney fees. The Western District of Louisiana has a standing order, which was entered on September 19, 2013, regarding presumptive or "no look" fees in all Chapter 13 cases. The "no look" fee for each uncontested objection to claim is $250.00. While JH Portfolio is correct that the effect of an erroneous claim filing would be felt by other unsecured creditors, by filing an erroneous claim, the debtor's lawyer seeking to disallow the claim would have a claim for professional fees under 11 U.S.C. § 330(a)(4)(B) that the debtor would be required to pay in order to receive her discharge. *See also* 11 USC 1322(a)(2). The confirmed plan in the underlying bankruptcy case does not allow for the payment of the "no look" fee or any other reasonable fee approved by the Court for the claim

objection.  Currently the confirmed plan (Case No. 15-30223, Docket No. 7) only pays $14.32[7] to general unsecured claims.  Any increase in debtor attorney fees would leave the plan underfunded and would require the debtor to modify her Chapter 13 plan, at an additional cost in attorney fees,[8] because the defendants have filed a time-barred claim.

Alternatively, a debt collector under the FDCPA may be subject to statutory damages and attorneys' fees even if no actual damages are proven.  Specifically, the statute allows for actual damages and, in the Court's discretion, statutory damages not to exceed $1,000.  15 U.S.C. § 1692(k).  Jurisprudence holds that actual damages are not a prerequisite for statutory damages under the FDCPA. *See Baker v. G.C. Serv. Corp.*, 677 F.2d 775 (9th Cir. 1982). Moreover, the statute indicates that attorneys' fees and costs could potentially be available when the statutory penalty is appropriate. *Id.* at § 1692(k)(a)(3).  In *Spokeo*, the Supreme Court said the following:

> "Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete. See, e.g., Pleasant Grove City v. Summum, 555 U. S. 460, 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009) (free speech); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U. S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) (free exercise).
>
> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U. S. 765, 775-777, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in Lujan that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." 504 U. S., at 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351. *Id.* at 1549.

---

[7] Due to the calculation of Chapter 13 Trustee fees, this amount is actually estimated; however, any change to the actual payment to general unsecured creditors would be de minimis.

[8] The "no look" fee for a post confirmation Chapter 13 plan modification in the Western District of Louisiana is $500.00.

Accordingly, the Court finds the plaintiff has standing.

## C.  DOES FILING A TIME-BARRED CLAIM VIOLATE THE FDCPA

The central component of the plaintiff's complaint is that the filing of a proof of claim on a time-barred debt is a violation of the FDCPA.  Strong arguments have been made on both sides of the issue, and six circuit courts have adopted rules as described above.  Some courts have held that the filing of a stale proof of claim is a *per se* violation of the FDCPA, while other courts have held that the filing of a stale proof of claim can never give rise to a violation under the FDCPA. This Court believes the answer is somewhat more nuanced and lies somewhere in the middle. However, the Court reiterates that some courts have taken a contrary view.  This Court need not needlessly recite the reasoning of these learned judges.

As a threshold matter, this Court must determine whether the FDCPA and the Bankruptcy Code are compatible.  Courts disfavor the implied repeal of one federal statute by another.  Repeals by implication are not favored and should not be presumed.  *See Randolph v. IMBS, Inc*., 368 F.3d 726, 730 (7th Cir. 2004) ("When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other – and repeal by implication is a rare bird indeed.").  The Supreme Court has also asserted a presumption against the implied repeal of one federal statute by another.  It has said "[w]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Simon v. FIA Card Servs., N.A.,* 732 F.3d 259 (3d Cir. 2013), *citing J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 143-44, (2001) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

Several courts have recognized that the Bankruptcy Code and the FDCPA can coexist as does the Bankruptcy Code and the Real Estate Settlement Procedures Act (RESPA).  *Trevino v.*

*HSBC Mortg. Servs. (In re Trevino)*, 535 B.R. 110 (Bankr. S.D. Tex. 2015); *Perkins v. LVNV Funding, LLC* (*In re Perkins*), 533 B.R. 242 (Bankr. W.D. Mich. 2015); *In re Conley v. Cent. Mortg. Co.*, 2009 U.S. Dist. LEXIS 70002 (E.D. Mich. 2009). These three well-reasoned opinions are compelling. RESPA is a consumer protection statute enacted in 1974. It provides that upon receipt of a written request for information regarding a mortgage or a notice of error asserting a mistake, mortgage servicers must provide a written response acknowledging receipt of the notice within five days. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. § 1024.35. The servicer must then conduct an investigation and provide appropriate corrections or provide a written statement of reasons as to why it believes the account is correct. 12 U.S.C. § 2605(e)(2). Failure to comply with these provisions results in liability for actual damages and, if the plaintiff can show a pattern of noncompliance, additional damages not to exceed $2,000. 12 U.S.C. § 2605(f)(1).

Section 502 of the Bankruptcy Code provides a similar scheme as RESPA for resolving claim disputes concerning home mortgages. Instead of submitting a notice of error to a mortgage servicer, a debtor could simply file an objection to a proof of claim under Bankruptcy Rule 3007. Despite the existence of separate remedial schemes, the vast majority of courts which have considered the issue have determined that a claim under RESPA is not precluded by the Code. Just as the separate remedial provisions of RESPA can coexist with the Code, the FDCPA provides an alternative avenue for aggrieved debtors to challenge creditors' actions. *Trevino* at 534 B.R. at 139.

Because the Bankruptcy Code and the FDCPA do not conflict, a debtor in bankruptcy may seek relief under the FDCPA. Therefore, this Court recognizes that the FDCPA has not been impliedly repealed by the Bankruptcy Code. Additionally, it recognizes that the Bankruptcy Code allows creditors to file proofs of claim that appear to be barred by the statute of limitations.

However, when a particular type of creditor—designated a "debt collector" under the FDCPA—files a time-barred proof of claim in a debtor's Chapter 13 bankruptcy, that debt collector may be vulnerable to a claim under the FDCPA. The purpose of the FDCPA is to protect consumers from "abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt-collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

To determine whether a debt collector's conduct violates the FDCPA, the Fifth Circuit has instructed lower courts to apply the "least sophisticated consumer" standard. *Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009), *citing Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami*, 377 F.3d at 495; *see also Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994) ("At the same time we do not consider the debtor as tied to the very last rung on the [intelligence or] sophistication ladder."); *Taylor*, 103 F.3d at 1236 ("This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials.").

### D. VIOLATION OF THE FDCPA

Having determined that the FDCPA was not impliedly repealed by the Bankruptcy Code, the Court must next address the particular facts in this adversary proceeding. To state a cause of action under the FDCPA, a consumer must show the following: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as

13

defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D. Md. 2013). The plaintiff's complaint fails to state a plausible claim due to the third requirement above.

The plaintiff pleads the following in her complaint: "this is an action to rectify the abuse by the Defendants of Ms. Robinson, as well as her legitimate creditors and the Chapter 13 Trustee, resulting from Defendants' filing of the false, improper, and abusive Claim No. 10 in Plaintiff's Chapter 13 bankruptcy case." Specifically, Robinson claims "[t]he acts of the Defendants in attempting to collect the time-barred debt in Claim No. 10 violate the Fair Debt Collections Practices Act at 15 USC §§ 1692d, 1692e, and 1692f."

## 1. THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM UNDER 15 U.S.C. § 1692D

The plaintiff alleges a violation under 15 U.S.C. § 1692d, which prohibits a debt collector from "engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This section of the FDCPA contains a non-exclusive list of examples of the type of harassment, oppression and abuse prohibited by the FDCPA, including (i) the use or threat of violence or other criminal means to harm the person, reputation or property of the consumer, (ii) the use of obscene or profane language, (iii) the publication of a list of consumers who refuse to pay debts, (iv) the advertisement for sale of any debt to coerce payment, and (v) the placement of inappropriate telephone calls. 15 U.S.C. § 1692d(1)–(5). All of the examples "concern tactics intended to embarrass, upset or frighten a debtor." *Harvey v. Great Seneca Financial Corp.,* 453 F.3d 324, 330 (6th Cir.2006).

By filing a proof of claim, a creditor plainly seeks to recover on a debt. This Court adopts the reasoning in a recent decision addressing this very issue. *See LaGrone v. LVNV Funding, LLC (In re LaGrone)*, 525 B.R. 419 (Bankr. N.D. Ill. 2015). As the court in *LaGrone* noted, even

though a bankruptcy estate is distinct from a debtor, a proof of claim filed against a debtor's estate could still give rise to a violation of the FDCPA. That court stated that "[f]iling a proof of claim is the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt." *Id*. at 425.

In this adversary proceeding, the mere filing of a proof of claim, without any other act, cannot be said to cause any suffering and anguish to the plaintiff. Nor can the proof of claim be construed as embarrassing or otherwise causing humiliation to the plaintiff after she filed her Chapter 13 bankruptcy, which itself is readily available for viewing by the public and is of public record. If the plaintiff truly believes she suffered oppression, harassment or abuse, it was self-inflicted when she filed bankruptcy and scheduled a debt to World Finance (the basis of Claim No. 10) which she disclosed as "undisputed." (Docket No. 1, pg. 17). This essentially invited World Finance and all the plaintiff's creditors to file proofs of claim in her bankruptcy case. The complaint is completely silent as to any tactic the creditor used other than the filing of the proof of claim. Without more, the allegations in the complaint simply do not come close to the oppression, harassment and abuse contemplated by 15 U.S.C. § 1692d. Therefore, the plaintiff has failed to state a claim under 15 U.S.C. § 1692d upon which relief can be granted.

## 2. THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM UNDER 15 U.S.C. § 1692E

The Court next considers the plaintiff's allegation that the defendants violated 15 U.S.C. § 1692e, which provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This section of the FDCPA provides a list of unlawful conduct without limiting the general application of the broad prohibition on false or misleading representations and unfair practices. The complaint alleges the following:

Defendants' Claim No. 10 is false, deceptive, or misleading and in violation of §

1692e of the FDCPA because a claim is a "right to payment," and the Supreme Court has defined "right to payment" as a legally "enforceable" obligation. Time-barred debts are not legally enforceable. Defendants are thus asserting a "right to payment" when they know that no "right to payment" exists. That is a direct misrepresentation of the character and legal status of the debt.

This Court concludes that the filing of the claim does not violate 15 U.S.C. § 1692e. The proof of claim identifies a debt owed by the plaintiff to the defendants that was scheduled in her bankruptcy case. The proof of claim also contains specific information regarding the date the debt was charged off, the date of the last payment on the account, and the date of the last transaction. There is nothing false, deceptive or misleading about filing a proof of claim with specific true factual disclosures, and the claim is not a direct misrepresentation of the character and legal status of the debt.

The plaintiff further argues that the proof of claim mischaracterizes the legal status of the debt because it is time-barred. The Court disagrees the proof of claim in any way misrepresents the status of the debt. To the contrary, the proof of claim discloses, in a user-friendly format, the dates of the last activity, transaction, and charge off date with respect to the debt. Moreover, because the debt is prescribed but has not been extinguished, the defendants are permitted to continue to inform the plaintiff as to the amount of the debt. Prescribed debts in Louisiana are not totally extinguished. The Louisiana Supreme Court has held that prescription simply "cuts off resort to the courts for the enforcement of an existing substantive right, but does not affect directly the claim itself." *Ancor V. Belden Concrete Products, Inc.* 260 La. 372, 381, (1972). Therefore, the plaintiff has failed to state a claim under 15 U.S.C. § 1692e upon which relief can be granted.

3.  **THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM UNDER 15 U.S.C. § 1692F**

The plaintiff alleges the defendants violated Section 1692f of the FDCPA as they used unfair or unconscionable means to collect the debt which they knew to be legally unenforceable at

the time they filed the claim. The FDCPA does not define an "unfair or unconscionable" practice. The Court again stresses that the information contained in the proof of claim, none of which the plaintiff alleges to be untruthful in any way, does not appear to be "unfair or unconscionable." Instead, the proof of claim provides all of the information that creditors are required to provide in bankruptcy. *See* Fed. R. Bankr.P. 3001.

Bankruptcy cases, unlike collection actions, provide debtors with the benefit of the automatic stay. When the debtor files a bankruptcy petition and the automatic stay arises by operation of law, debt collectors are prohibited from taking actions to collect debts absent relief from the stay or an exception thereto. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate official form and shall be executed by the creditor or the creditor's authorized agent. Fed. R. Bankr. P. 3001(a)-(b). In nearly all consumer Chapter 13 cases, the only contact the general unsecured creditor has with the Court, the Chapter 13 Trustee, or the debtor is by filing the proof of claim form. The Court does not consider the filing of a factually accurate proof of claim to be an unfair or unconscionable means to collect a debt. It is a creditor action anticipated by the both the Bankruptcy Code and Bankruptcy Rules.

A debtor may contest a creditor's claim through the claims objection process provided under the Bankruptcy Code and Rules. 11 U.S.C. § 502; Fed. R. Bankr. P. 3007. When an otherwise accurate proof of claim is filed on a time-barred debt and a sufficient remedy exists for the debtor, the filing of a time-barred debt is not "unfair or unconscionable." The Bankruptcy Code and Rules anticipate that debtors or other parties may contest a time-barred claim through the claims objection process.

Moreover, a Chapter 13 Trustee, who has the fiduciary duty to examine and object to any improper proofs of claim, was appointed in this case. Therefore, in a Chapter 13 bankruptcy, even a debtor unrepresented by counsel is protected by due to the oversight functions of the trustee.[9] *See* 11 U.S.C. § 1302(b)(1) (incorporating 11 U.S.C. § 704(a)(5)). Assuming for argument that filing an accurate time-barred proof of claim violates the FDCPA, which it does not, debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process in bankruptcy is highly regulated and court controlled.

This Court again notes the oversight in the claims process in Chapter 13 cases in this district, both by the Court and the Chapter 13 Trustee. Claims are readily available for public review either through the Court's CM/ECF website, or the Chapter 13 Trustee's website. Chapter 13 Trustees regularly input all proofs of claim filed in Chapter 13 cases into their private databases. Chapter 13 Trustees regularly review all proofs of claims filed, conduct case audits, and file necessary claim objections. Any claim objection filed by the Trustee or the debtor are appropriately reviewed by the Court and ruled on. Properly followed and administered, the process for filing claim objections is uncomplicated and efficient. Therefore, the plaintiff has failed to state a claim under 15 U.S.C. § 1692f upon which relief can be granted.

This Court can envision multiple situations in bankruptcy cases where the filing of a false, fraudulent or factually inaccurate time-barred proof of claim would give rise to violations under the FDCPA; however, the plaintiff has not alleged any facts which would give rise to one of these situations. However, if a creditor filed a false, fraudulent or factually inaccurate proof of claim, time-barred or not, that would be actionable under the FDCPA. *See In re Trevino*, 535 B.R. 110

---

[9] The debtor in this case was represented by counsel, which offers an additional level of protection.

(Bankruptcy S.D. Tex. 2015) ("The mere fact that the Code contains safeguards designed to protect against false proofs of claim, however, does not mean that a creditor who files such claims is shielded from liability under the FDCPA.").

### E. ABUSE OF PROCESS

The plaintiff claims the defendants' actions constitute an abuse of process. Specifically, they plead "[c]laim objections are a drag on the bankruptcy administration process, which is geared toward speed and efficiency and which presumes that only claims based on legally enforceable obligations are to be filed and that such claims are to be allowed as filed." Docket No. 1, pg. 17 of 21. They additionally argue that (1) bankruptcy counsel, often working under a flat rate or no look fee, work on volume and have no incentive to police improperly filed claims, (2) that debtor's and their counsel often bear the costs of claim objections, and (3) that debt collectors are creating a loophole via the Bankruptcy Code which allows them to enforce otherwise legally unenforceable claims. This Court disagrees with these assertions.

From the debtor's perspective, the process of objecting to general unsecured claims in consumer Chapter 13 cases is remarkably simple. Debtors and debtor's counsel typically object to proofs of claims in Chapter 13 cases where it is economically beneficial to the debtor to do so; otherwise, they do not object.

Chapter 13 debtors typically either confirm a percentage plan or a pot plan. A percentage plan typically provides that allowed general unsecured claims shall receive a percentage of their claim. For example, in a five percent plan, general unsecured claims would receive a predetermined payment of five percent of their claim. So, an allowed general unsecured claim of $1,000.00 in a five percent plan, the creditor would ultimately receive a payout from the trustee of

$50.00.  The payment would be deferred because Chapter 13 plan payments are made over 36 to 60 months and general unsecured creditors in Chapter 13 plans are typically paid last.

The alternative way to treat allowed general unsecured claims is a pot plan.  The debtor's plan proposes a pot of a certain dollar amount to pay general unsecured creditors after payment of priority and secured debts.  There is no stated percentage return, but general unsecured creditors receive a pro rata distribution of the pot amount based on the total amount of allowed general unsecured claims.  However, a debtor makes no promise to general unsecured creditors concerning what return on their proof of claim they will receive.  One advantage to a pot plan is certainty for the debtor as the amount they must pay general unsecured creditors is known at the beginning. Whether claims come in large, small or not at all, the debtor just pays the pot amount which is divided among the general unsecured creditors on a pro rata basis.  Another advantage of a pot plan is that it frees the debtor and debtor's counsel from reviewing and objecting to general unsecured claims.  The debtor is indifferent as to how the pot is divided among general unsecured creditors.  This is because even if one claim is wildly inflated, the debtor's obligation does not change.

Economically, it makes sense for a debtor or debtor's counsel to file claim objections to time-barred claims in high percentage or high dollar amount pot plans.  In a percentage plan proposing a 100% payout to unsecured creditors, a successful claim objection to a time-barred claim reduces the amount that a debtor is required to pay into a Chapter 13 plan.   Pot plans that have a pot large enough to pay unsecured claims in full also benefit from claim objections to time-barred claims for the same reason—it reduces the amount that a debtor pays in a Chapter 13 plan. Prosecuting objections to time-barred claims in a Chapter 13 case is a simple process for debtor's

counsel, the Chapter 13 Trustee or any other party in interest. This Court has not found the claim objections based on time-barred claims to be a drag on the bankruptcy administration process.

Conversely, it makes little economic sense for a debtor, debtor's counsel, the Chapter 13 Trustee, or a party in interest to file claim objections in low percentage or small pot plans. A time-barred claim that can often be paid less than $10.00 in deferred payments is usually not worth objecting to. This is because the payment to the creditor would be minimal, the administrative costs of the objection would be disproportionate to any benefits of the objection, and the fact that many Chapter 13 cases are dismissed prior to discharge and the general unsecured claims filed in the case, time-barred or not, are never paid due to the dismissal. This Court is not offended that no parties object to time-barred claims given these economic realities. A time-barred claim which has not been disallowed may be paid according to the terms of a confirmed plan. In Louisiana, a time-barred claim is not extinguished. Prescription in Louisiana is a preemptory exception—if not raised, it is waived. Further, a primary tenant of the Bankruptcy Code is to provide for fair and orderly distributions to creditors through a reorganization; parties surely realize the economics of such distributions are important when deciding whether to object to a particular claim. There is nothing fundamentally unfair about the settlement of claims based, in part, on economic factors. A debtor, trustee, or other party in interest may choose not to object to a time-barred claim based on the minimal payout on that proof of claim. This promotes economic efficiency and occurs regularly in bankruptcy courts pursuant to compromise between litigants and Federal Rule of Bankruptcy Procedure 9019.

Again, the Court must stress that a Chapter 13 Trustee, who has the fiduciary duty to examine and object to any improper proofs of claim, was appointed in this case. Therefore, in a Chapter 13 bankruptcy, even a debtor or debtor's counsel who chooses not to prosecute claim

objections is protected by additional oversight in the form of a trustee. The trustee and/or any party in interest, including the debtor and his creditors, may object to a claim. Fed. R. Bankr. P. 3007; 11 U.S.C. §§ 502, 704(5) and 1302.

In addition, the claim process, including claims disallowance in Chapter 13 cases, cannot be an abuse of process because the process itself is highly regulated and court controlled. One must only read the Bankruptcy Code and Rules to reach such a conclusion, which includes, but is not limited to, the following: (1) Federal Rule of Bankruptcy Procedure 3001 which contemplates the filings of proofs of claim, (2) Federal Rule of Bankruptcy Procedure 3001(f), which contemplates the evidentiary effect of proofs of claims, (3) Federal Rule of Bankruptcy Procedure 3002(c), which establishes a time deadline for filing a proof of claim, (4) Bankruptcy Rule 9006(b)(3), which restricts extensions of the bar date for filing of claims to the circumstances set forth in Bankruptcy Rule 3002(c), (5) Federal Rule of Bankruptcy Procedure 3007–3008, which provides that objections to proofs of claim may be filed by any party in interest, (6) Federal Rule of Bankruptcy Procedure 3007(a), which provides that an objection to a claim should be made timely, must be in writing, and must be filed with a copy mailed to the claimant and other interested parties at least thirty days prior to a hearing on the objection, and (7) 11 U.S.C. § 502, which permits creditors to file time-barred claims. The claims process is highly structured due to application of the Bankruptcy Code and Bankruptcy Rules. The claims allowance and objection process is under almost constant court oversight. It would be highly difficult, perhaps impossible, to consistently abuse the claims process in a Chapter 13 bankruptcy given the scrutiny of the claims process by the debtor, the Chapter 13 Trustee and the bankruptcy court.

11 U.S.C.S. § 105(a) states that a court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. The Fifth Circuit has held that §

105(a) grants bankruptcy courts the power to sanction vexatious conduct. One of the primary functions of § 105(a) is to prevent an abuse of process. A bankruptcy court has broad authority to take necessary or appropriate actions to prevent an abuse of process. However, the use of sanctions must be accompanied by a specific finding of bad faith conduct. A finding of bad faith must be based on clear and convincing evidence. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998). To impose sanctions based on bad faith, a court must find that the "very temple of justice" has been defiled by a party's conduct. *In re Stomberg*, 487 B.R. 775, 817-18 (Bankr. S.D. Tex. 2013) (citing *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)). In other words, a party's bad faith may be established if it "deliberately abused the judicial process." *The Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014). Because the complaint does not set forth a plausible case that the defendants acted in bad faith, the plaintiff has failed to state a claim of an abuse of process claim upon which relief can be granted.

## V.   CONCLUSION

The plaintiff has failed to plausibly state a claim for relief but should be given an opportunity to amend her complaint if possible. Therefore, the Court conditionally grants the Motion to Dismiss for Failure to State a Claim and allows JH Portfolio to withdraw its claim and denies the plaintiff/debtor's motion to strike for the reasons previously stated. The plaintiff may file an amended complaint without leave of court within twenty-one days of entry of this order pursuant to Fed. R. Civ. P. 15(a)(2). At the expiration of the twenty one day period, the Court shall prepare separate orders, both in the main bankruptcy case and this adversary, that are consistent with this memorandum order and the plaintiff' amended complaint, if any.

**SO ORDERED**

###